UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE W. JASMAN, JR.,                    Case No. 20-11314

                Plaintiff,            Matthew F. Leitman
    v.                                      United States District Judge

ANDREW SAUL                                 Curtis Ivy, Jr.
COMMISSIONER OF SOCIAL                      United States Magistrate Judge
SECURITY,

              Defendant.
_____/

### REPORT AND RECOMMENDATION ON
### CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 15, 16)

    Plaintiff Lawrence W. Jasman, Jr. ("Plaintiff") brings this action pursuant to

42 U.S.C. § 405(g), challenging the final decision of Defendant Andrew Saul,

Commissioner of Social Security ("Commissioner") denying his application for

supplemental security income under the Social Security Act (the "Act"). This

matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 15), the

Commissioner's cross-motion for summary judgment (ECF No. 16) and the

administrative record (ECF No. 13).

    For the reasons that follow, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 15), **GRANT** Defendant's

motion for summary judgment (ECF No. 16), and **AFFIRM** the Commissioner's decision.

## I.    DISCUSSION

### A.    Background and Administrative History

Plaintiff alleges his disability began on July 30, 2016, at the age of 50.  (ECF No. 13, PageID.141, 142).  He filed an application for supplemental security income on November 30, 2016.[1]  (*Id.* at PageID.141).  In his disability report, he identified the following alleged impairments as the conditions which limited his ability to work: Seizure disorder, COPD, Emphysema, Rectal Cancer,[2] Depression, Anxiety and Rheumatoid Arthritis.  (*Id*. at PageID.141-42).

Plaintiff's application was initially denied on December 6, 2016.  (*Id.* at PageID.158).  On September 8, 2017, he requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at PageID.174-76).  On February 25, 2019, ALJ Adam Dale ("ALJ Dale") held a hearing, at which Plaintiff and Amelia Shelton, the vocational expert ("VE") in the matter, testified.  (*Id.* at

---

[1] In January 2014, Plaintiff filed an application for Title II benefits, with an alleged onset date of May 1, 2013, which was denied on August 3, 2016.  (ECF No. 13, PageID.68).  ALJ Adam Dale found that because the prior decision concerned an application under Title II only, Acquiescence Rules 98-3(6) and 98-4(6) did not apply as the pertinent application was for Title XVI benefits only.  (*Id.*).  The Court will not endeavor to consider any issues regarding this matter as Plaintiff has not challenged this particular finding.

[2] On the date the application was submitted, Plaintiff's rectal cancer was in remission. (*Id.* at PageID.102, 142).

2

PageID.85-112).  On March 29, 2019, ALJ Dale issued an opinion, which determined Plaintiff had not been under a disability as defined by the Act since November 30, 2016, the date the application was filed.  (*Id.* at PageID.79).

Plaintiff submitted a request for review of the hearing decision to the Appeals Council.  (*Id.* at PageID.237).  However, on March 31, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id.* at PageID.52-54).  Thus, ALJ Dale's decision became the Commissioner's final decision.  Plaintiff timely commenced the instant action on May 26, 2020.[3]  (ECF No. 1).

### B.    Plaintiff's Medical History

ALJ Dale found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease, emphysema, seizure disorder with recurrent syncope and presyncopal episodes, rheumatoid arthritis with polyarthropathy, major depressive disorder, and generalized anxiety disorder.  (ECF No. 13, PageID.70).  ALJ Dale considered Plaintiff's cannabis use disorder, history of rectal cancer, and iridocyclitis of the left eye as non-severe impairments.[4]  (*Id.* at PageID.70-71).  Plaintiff does not challenge these findings.

1. <u>Chronic Rheumatoid Arthritis</u>

---

[3] Although Plaintiff titled his brief as a "Motion and Brief for Remand Pursuant to Sentence Four," the Court will consider it to be a motion for summary judgment based on the structure and content of the brief.

[4] Note, the summary of Plaintiff's conditions, outlined below, is mostly based on Plaintiff's subjective hearing testimony as his medical record does not contain a substantial amount of information regarding his severe and non-severe impairments.

At his hearing, Plaintiff testified he suffered from rheumatoid arthritis and has been receiving treatment for the condition since 1989. (ECF No.13, PageID.93, 677, 924). He experiences problematic episodes in which his feet and knees are troublesome due to joint pain and swelling a few times throughout the month. (*Id.* at PageID.94, 95). The episodes typically last between one to four days. (*Id.* at PageID.93). The symptoms from the condition typically limit his physical activity (e.g., ability to stand or walk). (*Id.*). Typically, Plaintiff can stand for approximately 30 minutes and lift and carry up to ten pounds, but must use both hands to do so. (*Id.* at PageID.105).

Cold or damp weather will also cause issues concerning his arthritis and on some occasions he is unable to leave his home due to the pain he is experiencing. (*Id.* at PageID.97). In the past, he had taken Humira to treat his condition. (*Id.* at PageID.95). However, at the time of the hearing, Plaintiff was no longer taking the medication due to his inability to receive a preauthorization from his physician to refill the prescription. (*Id.*). In addition, he takes Ibuprofen, hot showers and hot baths to deal with the pain. (*Id.* at PageID.97).

Plaintiff's condition also affects his eyes, specifically his left eye which will typically become red and painful. (*Id.* at PageID.96). Fluorescent lights and sunlight both aggravate his condition. (*Id.* at PageID.97). At the time of the hearing, he was taking Plaquenil to treat these symptoms. (*Id.* at PageID.96).

4

### 2.  Chronic Obstructive Pulmonary Disease

Plaintiff also suffers from Chronic Obstructive Pulmonary Disease

("COPD") which he developed from smoking.[5]  (*Id.* at PageID.98, 503, 924).  He

experiences bouts of shortness of breath when trying to perform certain tasks such

as walking up the stairs or carrying items into the home and at times will begin

coughing.  (*Id.*at PageID.100).  Dust and fumes exacerbate his symptoms.  (*Id.* at

PageID.99).  Both cold air and humidity worsen his symptoms as well.  (*Id.* at

PageID.100).  He is currently on Ventolin and Symbicort to manage his symptoms;

he also uses a handheld nebulizer.  (*Id.* at PageID.99).  He does not experience

"any jitters" from using the nebulizer.  (*Id.*).

### 3.  Seizure Disorder

Plaintiff has a seizure disorder.  (*Id.* at PageID.398-99, 401-02, 415, 677).

On average, he experiences approximately three seizures per month.  (*Id.* at

PageID.101).  He began experiencing seizures during  the Spring of 1992.  (*Id.* at

PageID.277).  His latest episode occurred three weeks prior to his hearing before

ALJ Dale.  (*Id.* at PageID.101).  Prior to suffering a seizure, he feels a sense of

fluttering in his stomach followed by losing consciousness and waking on the

floor.  (*Id.* at PageID.277).  Afterwards, he experiences severe dizziness, nausea,

vomiting, weakness, soreness, extended periods of sleep, and memory loss.  (*Id.*).

---

[5] Plaintiff testified he quit smoking in 2017.  (ECF No. 13, PageID.98).

The seizures cause additional adversity as he is usually unable to perform many activities for two to three days following them.  (*Id.* at PageID.101).  He is no longer able to operate a motor vehicle as he lost his license due to his seizure condition.  (*Id.* at PageID.278).  He takes Vimpat and Depakote to manage his condition.  (*Id.*).  He started Depakote approximately four years prior to the hearing date.  (*Id.* at PageID.101).

4. <u>Depression and Anxiety</u>

Plaintiff testified he experiences depression-related symptoms and anxiety. (*Id.* at PageID.103).  On some days, he awakens in a great mood but as the day progresses he begins to feel miserable.  (*Id.*).  Typically, there is no triggering event.  (*Id.*).  In regard to his anxiety, Plaintiff testified he cannot "take the crowds" and while rare, he will usually wait in the car when he takes his wife grocery shopping.  (*Id.* at PageID.104).

Plaintiff disclosed on his application that he needs to be reminded to take a shower and his medication.  (*Id.* at PageID.285).  However, he is able to engage in a few household chores such as washing dishes and sweeping.  (*Id.*).  His hobbies include playing on his cellular device and watching television.  (*Id.* at PageID.287).  Further, he engages in conversations with individuals on a daily basis and sometimes plays games with them.  (*Id.*).  Also, he has no issue getting along with authority figures.  (*Id.* at PageID.289).

Plaintiff is prescribed Effexor for both his depression and anxiety and Vistaril for his anxiety.  (*Id.* at PageID.103).  He testified that Vistaril is helping with the anxiety as long as he takes it well in advance prior to leaving his home. (*Id.*).

### 5.  Additional Conditions

Plaintiff takes Zyprexa for the "shadows out of the corner of [his] eye. . . ." (*Id.* at PageID.104).  He testified the treatment was managing this condition well as he no longer sees many shadows.  (*Id.*).

Plaintiff takes Doxepin, a sleeping pill, to help him sleep at night as he was waking early in the morning and unable to fall back asleep.  (*Id.* at PageID.104-05).

Plaintiff also ingests Prilosec to help "keep his stomach intact" due to all of the other medications he is taking.  (*Id.* at PageID.103).

## C.    The Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(b), at **Step 1** of the sequential evaluation process, ALJ Dale found that Plaintiff had not engaged in substantial gainful activity since November 30, 2016, the application date.  (*Id.* at PageID.70).  At **Step 2**, ALJ Dale found that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease, emphysema, seizure disorder with recurrent syncope and presyncopal episodes, rheumatoid arthritis with

polyarthropathy, major depressive disorder, and generalized anxiety disorder.
(*Id.*).  ALJ Dale also considered Plaintiff's cannabis use disorder, history of rectal
cancer, and iridocyclitis of the left eye, which he categorized as non-severe, in
combination with Plaintiff's severe impairments in determining his residual
functional capacity.  (*Id.* at PageID.70-71).  ALJ Dale assessed there was no
evidence that Plaintiff's cannabis use disorder caused any significant limitations.
(*Id.* at PageID.70).  The record also indicated Plaintiff's rectal cancer was in
remission and the situation was monitored and reviewed annually.  (*Id.* at
PageID.71).  The medical evidence and Plaintiff's testimony indicate Plaintiff's
iridocyclitis of his left eye, related to his rheumatoid arthritis, were effectively
managed with eye drops.  (*Id.* at PageID.71).  At **Step 3**, ALJ Dale found that
Plaintiff did not have an impairment or combination of impairments that met or
medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart
P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).  (*Id.*).  Between
**Steps 3 and 4** of the sequential process, ALJ Dale evaluated Plaintiff's residual
functional capacity ("RFC")[6] and determined that Plaintiff had the RFC:

> to perform light work as defined in 20 C.F.R. 416.967(b)
> except cannot climb ladders, ropes, or scaffolds; can
> occasionally climb ramps and stairs, balance, stoop,
> kneel, crouch or crawl; can frequently handle and finger

---

[6] The claimant's RFC is an assessment of the most the claimant can do in a work setting
despite his or her physical or mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard
v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

> objects with the bilateral upper extremities; cannot work
> at unprotected heights or around moving mechanical
> parts; cannot operate a motor vehicle as part of job
> responsibilities; can occasionally work in humid or wet
> environments; can occasionally work in extremes of hot
> or cold; can occasionally work around pulmonary
> irritants, such as fumes, odors, dusts or gases; can
> perform simple and routine tasks, as well as make simple
> work-related decisions; can occasionally deal with
> supervisors and coworkers, but not the general public;
> cannot work at production rate pace (e.g., assembly line
> work).

(*Id.* at PageID.73).  At **Step 4**, ALJ Dale determined that transferability of job

skills was not an issue as Plaintiff's past relevant work was unskilled.  (*Id.* at 77).

Although his past relevant work experience was unskilled, he has a high school

education and is able to communicate in English.  (*Id.*).  At **Step 5**, considering

Plaintiff's age, education, work experience, and RFC, ALJ Dale determined there

were jobs that existed in significant numbers in the national economy that Plaintiff

could perform.  (*Id.*).  ALJ Dale therefore concluded that Plaintiff had not been

under a disability, as defined in the Social Security Act, since November 30, 2016,

the date the application was filed.  (*Id.* at PageID.69, 78).

### D.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[7]  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984).

## E.     STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

---

[7] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless indicated otherwise.

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

The Court's review is limited to an examination of the record only. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). Neither the ALJ nor the Court is required to discuss every piece of evidence contained in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

G.    **Analysis and Conclusion**

Plaintiff proffers two arguments as to why the case should be remanded for

further review – (i) ALJ Dale failed to provide good reasons for rejecting the Medical Source Statement ("MSS") prepared by Plaintiff's primary care physician, Dr. Struble, (ECF No.15, PageID.1022) and failed to analyze the statement under 20 C.F.R. §416.927(c)(2); and (ii) ALJ Dale committed reversible error by failing to address the side effects—dizziness, drowsiness, gastrointestinal issues, and confusion—of the medications as discussed in the MSS.  (*Id.* at PageID.1022, 1031).

Plaintiff argues it was incumbent upon ALJ Dale to "at least address the primary care doctor's notation in the MSS about positive objective signs of reduced range of motion of the wrists, shoulders and ankles" to allow the reviewing Court an opportunity to trace his path of reasoning.  (*Id.* at PageID.1028).  Further, ALJ Dale failed to address in the RFC Plaintiff's frequent coughing, fatigue, or recurrent upper respiratory infections which may lead to work absences.  (*Id.* at PageID.1034).  Plaintiff alleges his rheumatoid arthritis, COPD, seizure disorder, intermittent blurry vision and recurrent dizziness warrant a closer look on remand to assess whether he is capable of performing the walking and standing requirements of light work.  (*Id.* at PageID.1022, 1035).

The Commissioner counters ALJ Dale's decision should be affirmed as it is supported by substantial evidence.  (ECF No. 16, PageID.1039).  Further, the Commissioner contends it was appropriate for ALJ Dale to give Dr. Struble's MSS

little weight as the statement consisted mostly of Plaintiff's diagnoses, symptoms, and medication side effects and the only opinion included addressed a determination that is reserved for the Commissioner. (*Id.* at PageID.1039, 1044). As the remaining segments of the MSS did not contain Dr. Struble's judgment or opinion on the severity and nature of Plaintiff's functioning, ALJ Dale was not required to weigh those observations in the decision. (*Id.*). Despite this, ALJ Dale's decision did in fact account for a majority of the diagnoses discussed in Dr. Struble's MSS and thus included limitations in Plaintiff's RFC to account for these conditions. (*Id.* at PageID.1039-40).

1. <u>Plaintiff's Treating Physician's Medical Source Statement</u>

On December 11, 2018, Dr. Struble completed a two-page MSS regarding Plaintiff's conditions. (ECF No. 13, PageID.921-22). The statement consists of five inquiries in total, with subparts, which consist of fill in the blank and checkbox questions. (*Id.* at PageID.921). The statement identifies the following diagnoses: Rectal Cancer, Epilepsy, COPD, Rheumatoid Arthritis, DA, and Depression/Anxiety. (*Id.*). The MSS also identifies the following side effects related to Plaintiff's medical treatment: dizziness, drowsiness, gastrointestinal upset, and confusion. (*Id.*). It also identifies a reduced range of motion in Plaintiff's wrists, feet, ankles, and shoulders. (*Id.*). The section regarding whether Plaintiff's leg(s) should be elevated if he were placed in a competitive 8-hour work

setting, with prolonged sitting, is not fully completed by Dr. Struble and the only

statement he includes in response to the question is Plaintiff is "[t]otally disabled."

(*Id.*). Dr. Struble goes on to confirm Plaintiff experiences issues with shortness of

breath on exertion and identifies the following symptoms: wheezing, periods of

frequent coughing, fatigue, and recurrent upper respiratory infections more than

once a year. (*Id.* at PageID.922). Lastly, Dr. Struble identifies the following as

sensitivities for Plaintiff: dust, fumes, cold air, humid air, smoke, and allergens.

(*Id.*).

ALJ Dale assigned little weight to Dr. Struble's opinion regarding Plaintiff's

disability status as noted in the following statement:

> "As for the opinion evidence, the claimant's primary care
> provider, Russell Struble, M.D., opined that the claimant
> is totally disabled. That opinion is given little weight
> because disability determination is reserved strictly to the
> Commissioner of Social Security."

(internal citations omitted) (*Id.* at PageID.76). The decision contains no other

references to Dr. Struble's MSS. Plaintiff argues ALJ Dale failed to provide good

reasons for rejecting Dr. Struble's MSS and failed to analyze the MSS under 20

C.F.R. § 416.927(c)(2). (ECF No.15, PageID.1022, 1031). The undersigned finds

this argument unpersuasive.

The opinions included in an MSS provide evidence to the Commissioner

"about the nature and severity of an individual's impairment(s), including

symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Jackson v. Comm'r of Soc. Sec.*, 2017 WL 4699721, at *5 (E.D. Mich. Oct. 19, 2017).  When such opinions are issued "the regulations deem the statements to be 'medical opinions; subject to a multi-factor test that weighs their value." *Id.* (citing 20 C.F.R. § 404.1527).

The treating physician doctrine recognizes that "medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical conditions." *Bennett v. Comm'r of Soc. Sec.*, 2016 WL 7486277, at *3 (W.D. Mich. Dec. 30, 2016) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)).  An ALJ is required to "give controlling weight to the opinion of a treating physician if: (1) the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) the opinion 'is not inconsistent with the other substantial evidence in the case record.'" *Id.* at *3 (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527)).  This is appropriate only in instances where the specific opinion "is based upon sufficient medical data." *Id.* (citing *Miller v. Sec'y of Health and Hum. Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991)).  In instances where an ALJ "accords less than controlling weight to a treating source's opinion, the ALJ must 'give good reasons' for doing so." *Bennett*, 2016 WL 7486277 at *4.  Further, the "reasons must be 'supported by the

evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Id.* This "requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Id.* at *4 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). "The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources." *Id.* (citing 20 C.F.R. § 404.1527(c)). "The test looks at whether the source examined the claimant, 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (citing *Wilson*, 378 F.3d at 544.

Opinions that are unsupported by the medical record, merely state a conclusion or contradicted by substantial medical evidence may be rejected by the ALJ. *Bennett*, 2016 WL 7486277 at *3. Notably, "*excluded from the definition of 'medical opinions'* are various decisions reserved to the Commissioner, such as *whether the claimant meets the statutory decision of disability* and how to measure his or her RFC." *Id.* (citing 20 C.F.R. § 404.1527(d)) (emphasis added).

Also, in some situations a violation of the treating physician rule might be

considered harmless error if (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; and (3) 'where the Commissioner has met the goal of §1527(d)(2)–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation.'" *Wilson*, 378 F.3d at 547; *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x. 515, 525 (6th Cir. 2014) (quoting SSR 96–2p, at *1, which states that "[a] case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion"); *Williams v. Comm'r of Soc. Sec.*, 2018 WL 1322396, at *7 (E.D. Mich. Feb. 26, 2018), *report and recommendation adopted*, 2018 WL 1316167 (E.D. Mich. Mar. 14, 2018) (Opinion entitled only to little or no weight where it consists of a "check-the-box" form that is unaccompanied by any meaningful explanation).

First, the Court will address the medical opinion regarding Plaintiff's disability status included in the MSS.  (*Id.* at PageID.922).  ALJ Dale's decision to reject the sole opinion contained in Dr. Struble's MSS which discusses Plaintiff's disability status was appropriate as the opinion addresses the issue of disability which is reserved solely for the Commissioner. *Jackson*, 2017 WL 4699721 at *7 ("[T]he ALJ does not owe a treating opinion deference on matters reserved to the Commissioner."); *see also Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 584

(6th Cir. 2010) ("Conclusory medical opinions are properly discounted as only the Commissioner can make the ultimate determination of disability.").  Plaintiff's disability status is a finding reserved to the Commissioner and as such is "excluded from the definition of 'medical opinions.'" *Jackson.*, 2017 WL 4699721 at *5 (citing 20 C.F.R. § 404.1527(d)).  Further, Dr. Struble's statement that Plaintiff was "[t]otally disabled" provided no explanation or references to underlying medical evidence to support this statement.  *Bennett*, 2016 WL 7486277 at *4 (holding it was appropriate for the Commissioner to give little weight to the opinion as it lacked any accompanying explanation).  Thus, ALJ Dale was not required to give the statement controlling weight.

In addition, the Sixth Circuit has held that in scenarios where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it" a violation of the treating physician rule might be considered harmless error.  *Wilson*, 378 F.3d at 547.  The remaining portions of Dr. Struble's MSS qualify as "patently deficient" as they consist of nothing more than responses and selections to checkbox inquiries.  *Id.*; *Willingham v. Comm'r of Soc. Sec.*, 2018 WL 5305082 (E.D. Mich. Aug. 22, 2018) ("Where a physician's opinion consists primarily of filling in check boxes without an explanation in support, such an opinion is patently deficient) (*citing* (citing *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016) (holding that the "check-box analysis"

submitted by Plaintiff's doctor lacked any accompanying explanation and thus "[e]ven if the ALJ erred in failing to give good reasons for not abiding by the treating physician rule, it was harmless error because the MSS [ ] [was] 'weak evidence at best' and [ ] [met the Sixth Circuit's] patently deficient standard.")).

Further, the remaining portions of Dr. Struble's MSS do not qualify as a "medical opinion" under 20 C.F.R. § 404.1527 as they consist of nothing more than diagnoses and symptoms unaccompanied by any explanation. Under the regulations "medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a party's] impairment(s), including [the party's] symptoms, diagnosis and prognosis, what [the party] can still do despite impairment(s), and [the party's] physical or mental restrictions." 20 C.F.R. § 404.1527 (2021). Historically, the Sixth Circuit has "declined to give significant weight to rudimentary indications that lack an accompanying explanation" similar to those included in Dr. Struble's MSS. *Jackson*, 2017 WL 4699721 at *5 (citing *Hernandez*, 644 F. App'x at 474). Aside from Dr. Struble's statement that Plaintiff is "[t]otally disabled" the MSS submitted by Dr. Struble is void of any other statements which reflect the judgments about the nature and severity of Plaintiff's condition. Thus, ALJ Dale was not required to weigh these statements. *Williams*, 2018 WL 1322396 at *7 (E.D. Mich. Feb. 26, 2018), *report and recommendation adopted*, 2018 WL 1316167 (E.D. Mich. Mar. 14, 2018)

(Opinion entitled only to little or no weight where it consists of a "check-the-box" form that is unaccompanied by any meaningful explanation).

    2.  Side Effects Experienced by Plaintiff

    Plaintiff next contends ALJ Dale committed reversible error by failing to address the side effects he was experiencing—dizziness, drowsiness, gastrointestinal issues, and confusion—from his prescribed medications.  (ECF No. 15, PageID.1022, 1031).  The undersigned also finds this argument unpersuasive.

    Allegations of a medication's side effects must be supported by objective medical evidence.  *See Farhat v. Sec. of Health & Human Servs.*, 1992 WL 174540, at *3 (6th Cir. July 24, 1991); *see also Bentley v. Comm'r of Soc. Sec.*, 23 F. App'x 434, 435 (6th Cir. 2001) (noting absence of reports by treating physician that claimant's "medication caused drowsiness as a side effect"); *Donegan v. Sec. of Health & Human Servs.*, 1993 WL 291301, at *7 (6th Cir. Aug. 2, 1993) (noting that no objective medical evidence supported claimant's allegations that his medication made him so drowsy that he was unable to work).  Such allegations must be supported by objective medical evidence even when included in a treating physician's opinion.  *Bowman v. Comm'r of Soc. Sec.*, 2000 WL 302768, at *1 (6th Cir. Mar. 17, 2000) ("The Commissioner is not bound by the opinion of a treating physician when the opinion is not supported by objective medical evidence.").

    Plaintiff's brief is void of references to medical records, besides Dr.

Struble's MSS, which include a notation connecting the side effects listed in the MSS to Plaintiff's medical treatment.  (*Id.* at PageID.1031-35).  In fact, the records referenced in ALJ Dale's decision note that Plaintiff was complying with his medical treatment and overall had "good tolerance of [the] treatment."  (ECF No.13, PageID.503).  At points, the record notes Plaintiff (i) denied experiencing either dizziness or gastrointestinal issues (e.g., abdominal pain, constipation, diarrhea, nausea or vomiting) and (ii) appeared to be alert, oriented and/or cooperative, not confused.  (*Id.* at PageID.504-05, 511, 513, 517, 737, 739, 747, 748).  Further, the record contains at least one note which reflects Plaintiff in fact affirmatively reported "no adverse reactions" from his medical treatment during a doctor visit.  (*Id.* at PageID.366).  In the few instances where the medical record refers to Plaintiff experiencing confusion (*id.* at PageID.404), gastrointestinal issues (*id.* at PageID.680, 924) or dizziness (*id.* at PageID.956) the symptoms were either not attributed to Plaintiff's medical treatment or attributed to medication the Plaintiff discontinued prior to his hearing date.  Further, Plaintiff himself made no mention of experiencing side effects during his hearing but did discuss the effectiveness of his overall medical treatment.  (ECF No. 13, PageID.96, 97, 99, 103, 109).  Lastly, Dr. Struble's MSS is not helpful as while it identifies side effects Plaintiff experiences related to his medications it is inconsistent with the objective medical evidence contained in the record.

More importantly, several segments of ALJ Dale's decision contain references to Plaintiff's medical treatment accompanied by citations to the medical record and Plaintiff's hearing testimony.  (*Id.* at PageID.74, 75, 76).  These statements demonstrate ALJ Dale considered Plaintiff's overall medical treatment and its effect when preparing the RFC although his overall decision did not explicitly discuss the side effects that were identified in the MSS.  *Kornecky*, 167 F. App'x at 508 ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas*, 198 F. App'x at 526.

The undersigned is not persuaded by Plaintiff's argument and finds that ALJ Dale was not required to address the side effects identified in Dr. Struble's MSS as Plaintiff's objective medical records did not identify or discuss such side effects.

## F.    Conclusion

Plaintiff has the burden of proof on his statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  He has not shown legal error that would upend the ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 15), **GRANT** Defendant's motion for summary judgment (ECF No. 16), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 24, 2021                          s/Curtis Ivy, Jr.
                                             Curtis Ivy, Jr.
                                             United States Magistrate Judge